IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOANNA B.,[1] | 6:21-cv-00657-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

JOHN E. HAAPALA, JR.
401 E. Tenth Avenue
Suite 240
Eugene, OR 97401
(541) 345-8474

    Attorney for Plaintiff

SCOTT ASPHAUG
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1  -  OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**KELLY AREFI**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3883

      Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff JoAnna B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on March 29, 2018, alleging a disability onset date of January 30, 2011.  Tr. 157.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on August 5, 2020.  Tr. 30-64.  At the hearing Plaintiff amended her alleged onset

---

[1] Citations to the official transcript of record filed by the Commissioner on September 14, 2021, are referred to as "Tr."

2  - OPINION AND ORDER

date to March 29, 2018.  Tr. 35.  Plaintiff was represented by an attorney at the hearing and Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on September 24, 2020, in which he found Plaintiff was not disabled, and, therefore, Plaintiff was not entitled to benefits.  On March 1, 2021, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 9, 1975, and was 44 years old at the time of the hearing.  Tr. 157.  Plaintiff has a high-school education.  Tr. 1656.  Plaintiff does not have any past relevant work experience.

Plaintiff alleges disability due to bipolar disorder, post-traumatic stress disorder (PTSD), depression, anxiety, and insomnia.  Tr. 78.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.

3  - OPINION AND ORDER

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of*

5 - OPINION AND ORDER

*Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

6 - OPINION AND ORDER

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after her March 29, 2018, amended alleged onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of major depressive disorder, PTSD, strabismus, and "late effects of cerebrovascular disease."  Tr. 15.  The ALJ

7  -  OPINION AND ORDER

found Plaintiff's history of methamphetamine abuse, bacterial endocarditis, and nonruptured aneurysm are nonsevere. Tr. 16.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform light work

> except occasional balancing; avoid work at unprotected heights and around moving mechanical parts; should not be required to operate a motor vehicle as part of her job duties; she is limited to simple, routine tasks and simple work-related decisions; occasional interaction with the general public, coworkers, and supervisors; occasional dealing with changes in a simple workplace setting; and time off-task accommodated by normal breaks.

Tr. 19.

At Step Four the ALJ found Plaintiff does not have any past relevant work experience. Tr. 24.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 24. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected the opinions of treating physician John Alcott, M.D., and (2) failed to order a consultative examination or to call a medical expert.

8 - OPINION AND ORDER

**I.   Dr. Alcott's Opinions**

Plaintiff asserts the ALJ erred when he partially rejected the opinions of Dr. Alcott, treating physician.

"Because plaintiff filed her application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y] . . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission

9  -  OPINION AND ORDER

of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation. *Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain how other factors were considered including the relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). *But see* 20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more opinions about the same issue are equally supported and consistent with the record but not exactly the same, the ALJ must articulate how these "other factors" were considered).

On September 2, 2020, Dr. Allcott completed a Medical Source Statement in which he noted he is Plaintiff's primary care physician and has seen Plaintiff "annual[ly] since 8/7/15."

10 - OPINION AND ORDER

Tr. 2669. Dr. Allcott listed Plaintiff's diagnoses as dementia, depression/anxiety, "emotional lability," and diplopia. *Id*. Dr. Allcott did not list Plaintiff's symptoms but set out the "clinical findings and objective signs" as follows: "MoCA[2] 17/30 SLUMS[3] 15/30." *Id*. Dr. Allcott identified anxiety and organic brain syndrome as "psychological conditions affecting [Plaintiff's] physical condition" and noted Plaintiff suffers from dizziness due to diplopia. Tr. 2670. Dr. Allcott opined Plaintiff can walk four blocks at a time; can sit for one or two hours at a time; can stand for twenty minutes at a time; can sit and stand for less than two hours in an eight-hour workday; can lift less than ten pounds occasionally and lift ten pounds rarely; can twist rarely; and can never stoop, crouch, squat, climb stairs, or climb ladders. Tr. 2670-71. Dr. Allcott stated Plaintiff would "sometimes need to take [15 minute] unscheduled breaks during a working day" due to "shortness of breath," but he did not state how often Plaintiff would have to take breaks. Tr. 2670. Dr. Allcott noted Plaintiff has "significant limitations with reaching, handling, and fingering" due to "diplopia, double vision," but he did not identify the "percentage of time during an 8-hour working day that [Plaintiff]

---

[2] MoCA is the Montreal Cognitive Assessment test for mild cognitive impairment and dementia.

[3] SLUMS is the Saint Louis University Mental Status Examination for mild cognitive impairment and dementia.

11 - OPINION AND ORDER

can use [her] hands/ fingers/arms" for various activities such as grasping, fine manipulation, and reaching. Tr. 2671. Dr. Allcott opined Plaintiff is likely to be off task 25 percent or more of an eight-hour workday, she is "incapable of even low stress work," and would miss more than four days per month of work. *Id.*

Also on September 2, 2020, Dr. Allcott completed a Stroke Medical Source Statement in which he stated Plaintiff suffers from balance problems, poor coordination, loss of manual dexterity, unstable walking, fatigue, vertigo/dizziness, headaches, difficulty remembering, confusion, emotional lability, problems with judgment, double or blurred vision, and partial or complete blindness. Tr. 2673. Dr. Allcott opined Plaintiff can walk four blocks at a time; can sit for more than two hours at a time; can stand for ten minutes at a time; can stand for less than two hours total in an eight-hour workday; can sit for two hours total in an eight-hour workday; can lift ten pounds frequently, twenty pounds occasionally, and fifty pounds rarely; can twist, crouch or squat, and climb stairs rarely; can stoop occasionally and can never climb ladders. Tr. 2675. Dr. Allcott stated Plaintiff would need to take ten-minute unscheduled breaks hourly during the workday. Tr. 2674. Dr. Allcott noted Plaintiff does not have any "significant limitations with reaching, handling, and fingering." Tr. 2675. Dr. Allcott

12 - OPINION AND ORDER

opined Plaintiff is likely to be off task 25 percent or more of an eight-hour workday and she is "incapable of even low stress work." Tr. 2676.

The ALJ found Dr. Allcott's opinions to be "not persuasive." Tr. 24. Specifically, the ALJ noted Dr. Allcott provided the opinions in September 2020, but the last treatment notes from Dr. Allcott in the record were from May 2019. In addition, the ALJ pointed out that although they were both completed on the same date, Dr. Allcott's opinions are inconsistent with each other. For example, in his Medical Source Statement Dr. Allcott stated Plaintiff has "significant limitations with reaching, handling, and fingering" due to "diplopia, double vision." Tr. 2671. In his Stroke Medical Source statement, however, Dr. Allcott stated Plaintiff does not have any "significant limitations with reaching, handling, and fingering." Tr. 2675. Similarly, in his Medical Source Statement Dr. Allcott opined Plaintiff can sit for one or two hours at a time; can stand for twenty minutes at a time; can sit and stand for less than two hours total in an eight-hour workday; can lift less than ten pounds occasionally and ten pounds rarely; can twist rarely; and can never stoop, crouch, squat, climb stairs, or climb ladders. Tr. 2670-71. In his Stroke Medical Source statement, however, Dr. Allcott opined Plaintiff can sit for more than two hours at a time; can stand for ten minutes at a time; can stand for less

13 - OPINION AND ORDER

than two hours total in an eight-hour workday; can sit for two hours total in an eight-hour workday; can lift ten pounds frequently, twenty pounds occasionally, and fifty pounds rarely; can twist, crouch or squat, and climb stairs rarely; can stoop occasionally and can never climb ladders.  Tr. 2675.

The ALJ also stated the record does not support the level of symptom severity noted by Dr. Allcott.  For example, Dr. Allcott assessed Plaintiff with significant limitations with standing, walking, and dizziness, but the record does not reflect Plaintiff was prescribed any assistive device such as a cane, walker, or wheelchair or that Plaintiff uses any assistive device.  The ALJ noted contrary to Dr. Allcott's opinion that Plaintiff had dementia or organic brain syndrome, the record reflects Plaintiff did not follow up with a neurologist after August 2018 and Dr. Allcott did not refer Plaintiff to any specialist "that would be appropriate based on these opinions."  Tr. 24.

On this record the Court concludes the ALJ did not err when he partially rejected Dr. Allcott's opinions because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**II.  The record was sufficiently developed**

Plaintiff asserts the ALJ erred when he failed to fully develop the record.  Specifically, the ALJ erred when he failed to order a consultative examination or to call a medical expert

14 - OPINION AND ORDER

at the hearing.

The ALJ must develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See also Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001)(same). The decision whether to request a consultative examination is within the discretion of the ALJ. *See Taylor v. Astrue*, 386 F. App'x 629, 632 (9th Cir. 2010)("The Social Security Administration has broad latitude in ordering consultative examinations."); 20 C.F.R. § 416.919a ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim."). Similarly, "Social Security Ruling 18-1p allocates discretion to ALJs to solicit testimony from a medical expert." *S.B. v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01842-PHX-JAT, 2021 WL 5150092, at *5 (D. Ariz. Nov. 5, 2021)(citing S.S.R. 18-01p, at § I.B.2 ("The decision to call on the services of [a medical expert] is always at the ALJ's discretion.")).

Plaintiff points out that in May and December 2019 reviewing psychologists Frank Gonzales, Ph.D., and Megan Nicoloff, Psy., D., noted there was "insufficient evidence to evaluate [Plaintiff's] claim" regarding psychiatric disabilities. Tr. 71, 82. According to Plaintiff, therefore, the ALJ erred when he did

15 - OPINION AND ORDER

not order a consultative examination or call a medical expert. The record, however, reflects the SSA attempted to contact Plaintiff to schedule a consultative examination and to determine whether Plaintiff had any current medical sources. Tr. 68-71, 79-82.  Plaintiff, however, did not respond to the attempts to schedule a consultative examination or submit additional evidence at the administrative level.  At the hearing the ALJ granted Plaintiff's request to keep the record open for the submission of additional medical evidence. Tr. 38.  The ALJ denied Plaintiff's request for a neuropsychological evaluation, but noted he would order an evaluation if he believed one was necessary after he reviewed any additional medical records Plaintiff submitted.  *Id*. Ultimately Plaintiff submitted over 900 pages of additional medical evidence and the ALJ incorporated that evidence into the record.  Tr. 13, 231-35, 1743-2676.  The ALJ reviewed the additional evidence and concluded the record was sufficiently developed to allow a proper evaluation of the evidence and, therefore, a neuropsychological examination was not needed. Specifically, after considering Plaintiff's additional medical records the ALJ concluded the amount and type of treatment Plaintiff sought after November 2018 was not indicative of disabling functional limitations.  Thus, the additional records "failed to corroborate the extent of [Plaintiff's] allegations." Tr. 22.  Accordingly, the fact that Drs. Gonzales and Nicoloff

considered the record to be inadequate at the administrative level does not establish the record before the ALJ was also insufficient or that the ALJ erred when he declined to order a consultative examination or to call a medical expert.

    The ALJ's decision is supported by the record. Specifically, an ALJ may consider whether a claimant has engaged in only conservative treatment as a reason to discount her symptom allegations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). *See also* 20 C.F.R. § 416.929(c)(4)(the amount and type of treatment is an important indicator of the intensity and persistence of a claimant's symptoms). Failing to "seek an aggressive treatment program" or "an alternative more-tailored treatment program" permits the inference that Plaintiff's symptoms were not as "all-disabling as [she] reported." *Id*. at 1039. Here, the ALJ inferred Plaintiff's cessation of her rehabilitation therapy in November 2018 and her failure to seek other treatments indicated Plaintiff's belief that such treatment was no longer necessary. The ALJ also noted Plaintiff did not follow up with a neurologist after she was discharged from the hospital and there is not any indication that Plaintiff's medical providers, including Dr. Allcott, recommended she do so. Accordingly, the fact that Plaintiff sought minimal treatment after November 2018 did not trigger the ALJ's duty to develop the record, rather it was a valid reason for the ALJ to discount

Plaintiff's symptom allegations.

On this record the Court concludes the ALJ did not err when he did not order a consultative examination or call a medical expert because the ALJ provided clear and convincing reasons for not doing so based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 15th day of July, 2022.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge

18 - OPINION AND ORDER